DENNIS J. HERRERA, State Bar #139669
City Attorney
ELIZABETH S. SALVESON, State Bar #83788
Chief Labor Attorney
STACEY A. LUCAS, State Bar #154345
Deputy City Attorney
Fox Plaza
1390 Market Street, 5th Floor
San Francisco, California 94102-5408
Telephone:     (415) 554-3949
Facsimile:     (415) 554-4248

Attorneys for Defendant
CITY AND COUNTY OF SAN FRANCISCO
AND HEATHER FONG

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DAMON KEEVE,<br><br>　　　　Plaintiff,<br><br>　　vs.<br><br>CITY AND COUNTY OF SAN FRANCISCO, SAN FRANCISCO POLICE DEPARTMENT AND HEATHER FONG,<br><br>　　　　Defendants. | Case No. C 05-3023 SBA<br><br>**ORDER**<br><br>**GRANTING DEFENDANT CITY AND COUNTY OF SAN FRANCISCO'S AND HEATHER FONG'S MOTION FOR SUMMARY JUDGMENT [Docket No. 20]**<br><br>**DENYING PLAINTIFF'S MOTION TO AMEND COMPLAINT [Docket No. 18]**<br><br>Hearing: December 19, 2006<br>Time:　　 1:00 p.m.<br>Place:　　Courtroom 3, 3rd Floor<br>　　　　　1301 Clay Street, Oakland, CA<br><br>Date Action Filed:　July 28, 2005<br>Trial Date:　　　　February 5, 2007<br><br>Judge: Honorable Saundra B. Armstrong |

Order Granting Summary Judgment and Denying
Motion to Amend Complaint
CASE NO. C 05-3023 SBA

1

1   The matter comes before the Court on Defendants City and County of San Francisco and
2 Heather Fong's Motion for Summary Judgment and Plaintiff Damon Keeve's Motion to Amend the
3 Complaint.  These Motions came on regularly for hearing before this Court on December 19, 2006.
4 Vincent P. Hurley appeared as attorney for Plaintiff Damon Keeve; Deputy City Attorney Stacey
5 Lucas appeared on behalf of Defendants.
6   Having considered the papers filed by Plaintiff and Defendants, and argument of counsel,
7 IT IS HEREBY ORDERED Defendants' Motion for Summary Judgment is GRANTED and
8 Plaintiff's Motion for Leave to File an Amended Complaint is DENIED.

## FACTUAL BACKGROUND

10   Various Civil Service Rules set forth the process for making entry level and promotional
11 appointments in the City and County of San Francisco ("City").  Except for positions exempted from
12 the appointment and removal process, which positions are listed in Charter §10.104, all City
13 employees must be appointed through a competitive examination process.  This process generates an
14 eligible list.  The appointing officer then uses the eligible list to make appointments.
15   An appointment is made from an active eligible list after a requisition for each vacant position
16 in the civil service classification covered by the list has been approved by the Mayor's Office, the
17 funding for each requisition has been authorized by the Controller, and the Department of Human
18 Resources (DHR) has approved the use of the classification to fill the position.
19   Requests for requisitions are generated from department heads or "appointing officers," but
20 are frequently not approved by the Mayor's Office or the Controller's Office when the requesting
21 department has overspent its budget.  Historically, the SFPD has overspent its budget, which has
22 resulted in requisitions not being requested, or being requested and then being held or denied by the
23 Mayor's Office.
24   When promotional exams are developed for the SFPD, the Administration confers with the
25 Peace Officers Association (POA), the official bargaining unit for sworn personnel of the SFPD,
26 regarding what criteria will be used to the assess candidates.  Typically, promotional candidates
27 receive a set of scores for performance on a written and oral exam, and then additional points are

28

awarded for special skills, California Commission on Peace Officer Standards and Training (POST) certifications, bilingual abilities, and so forth.

In late 1999, the SFPD and DHR were preparing to give a Q-50 Sergeant's exam and the SFPD Administration wanted to award points for Field Training experience.[1]  Both the Administration and the POA agreed that experience as a Field Training Officer (FTO) prepares individuals to function in the role of a supervisor.  The Administration determined that individuals who did not have field training experience would have the option of signing a "waiver" that would credit them with 40 FTO points in exchange for an agreement to waive appointment from the eligible list until completion of a two-year commitment to serve as an FTO.  The waiver, in its entirety, reads as follows:

> As a condition for receiving field training officer credit points for the 2000 Q-50 Sergeant examination, I hereby waive consideration for appointment to the rank of Q-50 Sergeant from the 2000 Q-50 Sergeant examination eligible list until such time as I successfully complete the P.O.S.T.-certified field training officer course and participate in the Field Training Program for a period of two years, unless appointed to a higher rank which excludes participation, or other extenuating circumstances, as determined by the Chief of Police.  This waiver does not extend beyond the life of the list.

Waivers are recognized under San Francisco Civil Service Rule 213.10, and provide that an eligible candidate on a list may be placed on inactive status for a variety of reasons, including at his or her own request.  An eligible candidate under waiver cannot be certified to any position on the eligible list unless or until the waiver is lifted.

Keeve elected to sign the waiver.  Consistent with the Civil Service Rules, by signing the waiver, Keeve waived any right to appointment to the promotive rank of Q-50 Sergeant until the waiver was lifted.

Appointing officers have the discretion to make temporary assignments, also called "acting assignments" and "like-work/like pay" assignments.  This authority is derived from the City Charter

---

[1] Field training is intensive one-on-one training for recruits.  Individuals selected to train recruits are role models who are selected for training based on a specific set of criteria.

Order Granting Summary Judgment and Denying Motion to Amend Complaint
CASE NO.  C 05-3023 SBA

3

and Civil Service Rules, and is a long-standing practice in the SFPD when the operational needs of the Department require such assignments. Temporary assignments are sometimes made when a department has an eligible list from which to make promotional appointments and the operational need to fill vacancies, but do not have requisitions that have cleared the approval process.

On September 12, 2001, then Chief of Police Fred Lau issued an order placing 46 individuals whose names appear on the P-26 Sergeant's exam list into temporary like-work/like-pay (LWLP) Sergeant assignments. Although the word "promotion" appears on Personnel Order No. 19, none of the 46 individuals identified with that designation received a promotional civil service appointment unless and until they completed the appointment process procedures. For individuals who had signed the waiver, this meant they had to satisfy the terms of the waiver.

Keeve was among those assigned as a LWLP Sergeant by Chief Lau in September 2001. Chief Lau's placement of Keeve into a Q-50 Sergeant assignment did not change the terms of the waiver signed by Keeve. In order to be eligible for a promotion to the rank of Q-50, Keeve still had to complete the two-year FTO commitment.

While most of the 46 individuals designated in Chief Lau's order were eventually appointed to the rank of Q-50 Sergeant, all of them worked in temporary LWLP assignments until the requisition approval process was complete and the appointment processing was final and, to the extent any of these individuals signed a waiver, no appointment was made until the waiver was lifted. While in the LWLP assignments, these individuals received Sergeant's pay for the hours worked. Vacation, sick and other time off was compensated at the rate for Q2-4 Police Officers.

Ultimately, Keeve was assigned to work as a temporary LWLP training Sergeant at Bayview Station. At some point in or around March 2002, the Department received a complaint that Keeve had attempted to bribe an officer of the Brisbane Police Department. If true, this would be a serious act of misconduct which could disqualify Keeve from the Field Training Program pending the investigation of these allegations. Keeve was suspended from the FTO Program.

At some point after the Brisbane incident, the Department became aware of a second set of allegations of serious misconduct by Officer Keeve while on duty at the Bayview Station. This led to

the decision to remove Keeve from the District Station to an administrative assignment while all of the allegations were being investigated. The alleged excessive force involving Keeve resulted in a civil lawsuit filed in San Francisco Superior Court on December 23, 2002, naming Keeve as a defendant. The lawsuit was dismissed in June 2004.

In May 2002, Chief Lau filed charges against Keeve with the San Francisco Police Commission regarding the Brisbane incident. In April 2004, Keeve entered into an agreement with the Police Commission in which he admitted to trying to bribe an officer and the Chief of the Brisbane Police. On the recommendation of Police Chief Heather Fong, the Police Commission suspended Keeve for 90 days, holding 45 days in abeyance for two years if there were no further sustained complaints of misconduct. Keeve was then reassigned from the temporary LWLP assignment and returned to his Q-4 position as a police officer.

## DISCUSSION

### I. DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Keeve contends that the LWLP Sergeant assignment made in September 2001 was really an "appointment" giving him a property interest in the rank of Sergeant. This, in turn, would require the SFPD to provide Keeve with an array of due process rights under 42 U.S.C. §1983 and California Gov't Code §3300, et seq (the Public Safety Officers Bill of Rights Act, or "POBRA".)

Defendants argue that no officer obtains a property interest in his or her rank unless and until the individual has been appointed to the rank, a process that entails approval of a requisition, assignment of the specific requisition to the individual, resignation from the individual's prior classification and acceptance of his or her new rank, and, finally, successful completion of a probationary period. Since Keeve was not appointed to the rank of Sergeant, he has no property interest in that rank and, consequently, no due process rights with respect to the rank of Sergeant.

### A. THE PEACE OFFICERS BILL OF RIGHTS ACT EXTENDS ONLY TO PEACE OFFICERS WHO ARE APPOINTED TO THEIR RANK

Cal. Gov't Code §3304 describes the due process rights of peace officers.

Section 3304 (a) provides as follows:
> No public safety officer shall be subjected to punitive action, or denied a promotion, or be threatened with any such treatment,

> because of the lawful exercise of the rights granted *under this chapter* … [Emphasis added.]

Section 3304 (b) provides as follows:
> No punitive action, nor denial of promotion on grounds other than merit, shall be undertaken by any public agency against any public safety officer *who has successfully completed the probationary period that may be required by his or her employing agency* without providing the public safety officer with an opportunity for administrative appeal. [Emphasis added.]

The underscored language in §3304 (b) was added to the statute in September 1998.

It is undisputed that Keeve did not go through the City's appointment process nor is it disputed that he signed a waiver stating: "I hereby waive consideration for appointment to the rank of Q-50 Sergeant from the 2000 Q-50 Sergeant examination eligible list until such time as I successfully complete the P.O.S.T.-certified field training officer course and participate in the Field Training Program for a period of two years."

Keeve argues that § 3304 applies to him as a police officer in the rank of Q-50 Sergeant. But he waived his right to any such appointment until he served out his two-year commitment, which he failed to do. Because Keeve was never appointed to the position, he could not have completed a probationary period for the rank of Sergeant. Therefore, section 3304 does not apply to Keeve in the Sergeant rank.

Keeve contends that he was entitled to at least three administrative appeals between March 2002 and April 2004: (1) when he was removed from the FTO program in March 2002; (2) when he was reassigned from the Bayview Station to Support Services in July 2004; and (3) when Chief Fong returned him to the Q-4 classification in July 2004. But none of the cases Keeve cites for this proposition involve a peace officer who was working in a temporary assignment. In each of these cases, the facts specify the plaintiff was permanently appointed to the rank, or else the status of the appointment was not relevant, as it is here.

Keeve does not dispute that 46 individuals were given LWLP assignments in September 2001 and continued in that capacity until the requisition approval process was complete and the appointment processing was final. To the extent any of these individuals signed a waiver, no

appointment was made until the waiver was lifted.[2]  Keeve does not dispute that while in the LWLP assignments, these individuals received Sergeant's pay for the hours worked, but that vacation, sick and other time off was compensated at the rate for Q-4 Police Officers.

Keeve cites to *White v. County of Sacramento*, 31 Cal.3d 676 (1982), and *Baggett v. Gates*, 32 Cal.3d 128 (1982), for the proposition that a decision to reassign a peace officer to a lower paying position is per se disciplinary, and so the officer is entitled to an administrative hearing.  But because Keeve was never appointed to the rank of Sergeant, these cases do not apply.  Further, both cases were decided prior to the 1998 amendment to §3304(b), which clarifies that administrative appeal rights under the POBRA only apply to public safety officers "who have successfully completed the probationary period that may be required by his or her employing agency."  If Keeve was complaining about loss of pay as a Q-4 officer, a classification in which he has successfully completed a probationary period, these cases would apply.

Keeve appears to argue that a public safety agency is prohibited from transferring peace officers under any circumstances unless the officer is provided a full menu of due process. This contention is undercut by Gov't Code §3303, which generally covers investigations and interrogations of peace officers suspected of misconduct.

Section 3303 (j) provides as follows:
> No public safety officer shall be loaned or temporarily reassigned to a location or duty assignment if a sworn member of his or her department would not normally be sent to that location or would not normally be given that duty assignment under similar circumstances.

This provision was tested and upheld in *Crupi v. City of Los Angeles* (1990) 219 Cal.App.3d 1111.

It is undisputed that in San Francisco, it is the normal practice of the SFPD to temporarily reassign sworn personnel to administrative duties pending the investigation of allegations of serious

---

[2] Keeve's argument that there are no rules about how to lift a waiver is without merit. Defendants demonstrated that one either fulfills the conditions of the waiver or he does not.  If the latter case, he remains unavailable for selection from an eligible list.

Order Granting Summary Judgment and Denying
Motion to Amend Complaint
CASE NO.  C 05-3023 SBA

7

c:\documents and settings\workstation\local settings\temp\notes06e812\keeve summary judgment order.doc

1  misconduct and that such allegations had been made against Keeve at the time he was reassigned
2  from Bayview Station to administrative duties.

3  Under §3304 (d), no punitive action may be undertaken for alleged misconduct if the
4  investigation is not competed within one year of the public agency's discovery of the alleged
5  misconduct.  However, this period is tolled where an officer is named as a defendant in civil litigation
6  where the officer is named as a defendant.  (§3304(g)(6).)  Keeve was named as a Defendant in a
7  lawsuit filed in December 2002.  That lawsuit alleged excessive force by Keeve and was dismissed on
8  June 11, 2004.  Therefore, under §§3303 (j) and 3304 (g)(6), Defendants lawfully assigned Keeve to
9  administrative duties.

**B.    SECTION 1983 CLAIMS**

   **i.    Public Employment in General**

The terms and conditions of public employment are generally fixed by the statute, rules or regulations creating it, not by contract. *Williams v. Los Angeles City Department of Water and Power* (1982) 130 Cal.App.3d 677, 680.  San Francisco is a charter city and the charter is its constitution. *City and County of San Francisco v. Patterson* (1988) 202 Cal.App.3d 95, 102.  In the instant case, Defendants demonstrate that the controlling "statute" is the Charter, which vests authority in the Civil Service Commission to set policy on virtually all employment matters.  The Civil Service Rules establish the process for competitive examinations and appointments in the City. One does not obtain a permanent civil service appointment without going through every step in this process.  Keeve fails to provide any evidence to the contrary.

Relying on *Thomas v. City of Los Angeles* (C.D. Cal. 1987) 676 F.Supp.976, Keeve tries to avoid the appointment problem by arguing that he worked as a Sergeant for a long time, and so he eventually became one.  That case is not applicable here because the facts are dissimilar, and because Keeve expressly waived the appointment.

In *Thomas*, plaintiff worked for more than eight years as a Zoo Director, obtaining performance evaluations along the way and express promises that even though he was exempt from the relevant civil service rules, he could only be terminated for cause.  After eight years on the job,

Thomas was unexpectedly notified of the City's intention to discharge him. He sued. The District Court surveyed cases on the creation of property interests, quoting language from *Perry v. Sindermann* (1972) 408 U.S. 593, 601, that "[a] person's interest in a benefit is a 'property' interest for due process purposes if there are such rules or mutually explicit understandings that support his claim of entitlement to the benefit and that he may invoke at a hearing." (*Id* at 601.) The *Thomas* decision then determined that "such an analysis is factually oriented and should be determined by the totality of the circumstances and the particular facts of each case. (*Thomas* at 981.) Looking at Mr. Thomas's situation, the Court found there was a mutual understanding supported by the following facts: (1) the City had no applicable rules or charter provisions (*Id.* at 979); (2) when Thomas asked about his exempt status, he was told he could not be terminated without just cause (*Id.* at 978); (3) a former general manager provided evidence that in his 35 years with the City's Recreation and Parks Department, "there was a policy of treating all employees, including exempt employees, alike, which meant there could only be just cause terminations" (*Id.* at 978); (4) the current manager testified there had to be "professional management reasons" for firing exempt employees (*Id.* at 979); (5) plaintiff's own supervisors testified the City did not have the right to fire the Zoo Director without cause (*Id.* at 978); (6) plaintiff received commendations and awards in his position as Zoo Director (*Id.* at 985); and (7) the Department in fact did convene a hearing in which plaintiff was represented by an attorney.

In concluding that plaintiff had a property interest his position as Zoo Director, the Court opined that it was apparent from "extensive pre-trial hearings" that plaintiff obtained a property interest in his position "through mutual understandings between him and his superiors. *The Court wishes to emphasize that this is a unique case*." (*Id.* at 985-986; emphasis added.)

Keeve is unlike Warren Thomas, the Zoo Director. Keeve signed a waiver stating "I hereby waive consideration for appointment to the rank of Q-50 Sergeant." Chief Lau assigned him to perform Sergeant duties in a temporary LWLP capacity, which he was authorized to do under the City Charter and the Civil Service Rules. Forty-five other people received similar assignments, and none of them were appointed to the rank of Sergeant until approved requisitions were in place and all

of the other processing papers were complete; until that time, no one assigned to a LWLP Sergeant had any permanent rights to the rank, they received no retirement benefits for the Sergeant rank, and all shift time off was compensated at their regular Q-4 police officer pay rate.  Further, unlike the exemplary performance apparently exhibited by the plaintiff in *Thomas* for over eight years, Keeve was in his temporary LWLP assignment for only six months before he tried to bribe the Chief of Police of the City of Brisbane and was then accused of excessive force while on duty – two serious charges, both of which the SFPD was required to investigate.

Thus, Keeve's argument that his temporary LWLP assignment was a permanent appointment to Sergeant is unsupported by the evidence.

### ii. Monnel Liability

Because Plaintiff fails to identify a custom or practice that caused the constitutional injury, his claims against the City under *Monnel v. New York City Dept. of Social Services* (1978) 436 U. S. 658 claims are also rejected.

### ii. Qualified Immunity

Because the Court finds that Keeve waived any property rights to the rank of Q-50 Sergeant, it need not address the issue of qualified immunity.

## C. DECLARATORY OR INJUNCTIVE RELIEF

Keeve seeks injunctive relief in the form of "reinstatement" to the rank of Q-50 with back pay. But because Keeve signed a waiver expressly waiving consideration for appointment to the rank of Q-50 Sergeant from the 2000 Q-50 Sergeant examination eligible list until such time as he successfully completed the P.O.S.T.-certified field training officer course and participated in the Field Training Program for a period of two years, he was never appointed to the Q-50 rank.  Thus, Keeve had no property interest in that rank and his cause of action for injunctive relief is denied.

## II. PLAINTIFF'S MOTION FOR LEAVE TO AMEND THE COMPLAINT

Plaintiff filed his Motion to Amend the Complaint after discovery closed and on the same day that Defendants filed their Motion for Summary Judgment. The Proposed Amended Complaint does not add any new legal theories or causes of action, but simply adds factual allegations.

A motion for leave to amend "is not a vehicle to circumvent summary judgment." *Schlacter-Jones v. Gen'l Tel. of Calif* (9th Cir. 1991) 936 F2nd 435, 449, overruled on other grounds, *Cramer v. Consol. Freightways, Inc*, (9th Cir. 2001) 255 F3rd 683, 692-693. Leave to amend the complaint may be denied where a plaintiff seeks to amend after summary judgment has been filed. *Cowen v. Bank United of Texas, FSB,* (7 C.A.7, Ill. 1995), 70 F.3d 93, 944, ("A plaintiff who proposes to amend his complaint after the defendant has moved for summary judgment may be maneuvering desperately to stave off the immediate dismissal of the case.")

The central issue in this case – whether Keeve's temporary, like-work/like pay assignment to Sergeant created a property right – is addressed fully in the motion for summary judgment. Keeve signed a waiver expressly waiving consideration for appointment to the rank of Q-50 Sergeant from the 2000 Q-50 Sergeant examination eligible list until such time as he successfully completed the P.O.S.T.-certified field training officer course and participated in the Field Training Program for a period of two years. The waiver is dispositive on all causes of action. The Proposed Amended Complaint does not raise new claims or causes of action. Therefore, this Court DENIES Keeve Leave to Amend his Complaint as any amendment would be futile.

## CONCLUSION

Defendants' Motion for Summary Judgment is GRANTED for the reasons stated herein and Plaintiff's Motion to Amended the Complaint is DENIED for the reasons stated herein.

**IT IS SO ORDERED.**

Dated: _12/28/06_____

Honorable Saundra B. Armstrong
United States District Court Judge